**Edmond Avanes ZAGARYAN, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 02–73506.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 2004.

Decided Feb. 17, 2004.

D. Jade Mundel, Timothy T. Hu, Marks & Acalin, David T. Acalin, Marks & Acalin, Los Angeles, CA, for Petitioner.

Regional Counsel, Immigration & Naturalization Service, Laguna Niguel, CA, Los Angeles District Counsel, Office of the District Counsel, Los Angeles, CA, Ronald E. LeFevre, Chief Legal Officer, Office of the District Counsel, San Francisco, CA, Jennifer A. Parker, Victor M. Lawrence, DOJ–U.S. Department of Justice, Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: REINHARDT, THOMPSON, and WARDLAW, Circuit Judges.

### MEMORANDUM *

Edmond Avanes Zagaryan (or "Zakarian"), a native and citizen of Armenia, petitions for review of the decision of the Board of Immigration Appeals ("BIA") denying his application for asylum, withholding of removal, and protection under the Convention Against Torture. Because the BIA summarily affirmed the decision of the Immigration Judge ("IJ") without an opinion, we review the IJ's decision as if it were the BIA's decision. *Al–Harbi v. INS*, 242 F.3d 882, 887–88 (9th Cir.2001).

### I.

■ The IJ made an adverse credibility determination on the basis of (1) Zagaryan's failure to provide as much detail in his testimony about the beatings and other abuse that he suffered as he had in his asylum application, and (2) the inconsistencies between his testimony and his application with regards to the dates of particular events. We review this adverse credibility finding to determine whether it is supported by substantial evidence. *Mejia–Paiz v. INS*, 111 F.3d 720, 723 (9th Cir. 1997).

The record reveals that the omissions and inconsistencies upon which the IJ based his adverse credibility determination are minor discrepancies that do not go to the "heart" of Zagaryan's claim that he experienced a pattern of beatings and death threats, and that when he threatened to report this abuse to the government, his tormentors arranged for him to be conscripted and sent to a war zone. *Bandari v. INS*, 227 F.3d 1160, 1166–67 (9th Cir.2000); *Singh v. Ashcroft*, 301 F.3d 1109, 1113 (9th Cir.2002).

The IJ also failed to consider reasonable explanations for the minor discrepancies. *Osorio v. INS*, 99 F.3d 928, 932 (9th Cir. 1996). The IJ focused on Zagaryan's failure to testify about an incident during one of his beatings that the IJ characterized as a sexual assault. Yet it is plausible that Zagaryan did not attach the same level of significance to these details or did not construe them as a sexual assault due to cultural differences. *Chouchkov v. INS*, 220 F.3d 1077, 1083 n. 15 (9th Cir.2000) ("non-evidence-based assumptions about conduct in the context of other cultures must be closely scrutinized."); *see also Arulampalam v. Ashcroft*, 353 F.3d 679, 683–87 (9th Cir.2003). Such a "subjective determination" of what a persecuted person would include in his testimony or application has no place in an adverse credibility determination. *Bandari*, 227 F.3d at 1166–67.

Furthermore, Zagaryan's testimony and application are not fundamentally incompa-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

tible. Each elaborates different details in a persistent pattern of abuse, and both are consistent about the sequencing of the main events.[1] To the extent that Zagaryan failed to elaborate during his oral testimony on specific incidents, such as when he was forced to dig his own grave, the omissions stem in large part from apparent mistranslations and miscommunication. *Maini v. INS*, 212 F.3d 1167, 1177 (9th Cir.2000). Early in the proceedings, the IJ reprimanded Zagaryan for long-winded answers. Subsequently, neither the IJ nor the Government attempted to elicit further testimony when Zagaryan did mention the particular incidents that the IJ faulted him for failing to describe in sufficient detail. *Akinmade v. INS*, 196 F.3d 951, 957 (9th Cir.1999).

Finally, the cumulative effect of the minor inconsistencies and omissions does not cast serious doubt on whether the persecution ever occurred. *cf. Pal v. INS*, 204 F.3d 935, 940 (9th Cir.2000). Accordingly, we conclude that there is not substantial evidence in the record to support the IJ's determination that Zagaryan's account lacked credibility.

## II.

The IJ also found that Zagaryan did not establish eligibility for asylum because he failed to demonstrate that he experienced past persecution. 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1).[2] To establish eligibility based on past persecution, Zagaryan must show that he suffered incidents that (1) rose to the level of persecution; (2) were "on account of" race, religion, nationality, membership in a particular social group, or political opinion; and (3) were committed by the government or forces the government is either "unable or unwilling" to control. *Navas v. INS*, 217 F.3d 646, 655–56 (9th Cir.2000).

Specifically, the IJ found that Zagaryan did not show that the Armenian government was unwilling or unable to protect him from the "alleged police brutes" because he failed to lodge a complaint with Prime Minister Sarkissyan who had recently pledged that he would investigate any reports of corruption or other governmental abuses. We conclude that the IJ erred in reaching this question because the evidence in the record compels a finding that the beatings, threats, and arrangements for Zagaryan to be conscripted were committed by government forces. In addition to the police guards at the construction site, Zagaryan's supervisor was a member of the police militia and was related to the local police chief. Moreover, the supervisor's father, who owned the construction company, headed the national military police. *See Baballah v. Ashcroft*, 335 F.3d 981, 991 (9th Cir.2003).

Even if the relationship between Zagaryan's tormentors and the Armenian government were unclear, the record still compels a finding that the government was unable to control corruption. There is no evidence in the record that Prime Minister Sarkissyan implemented his anti-corruption initiative; nor did he have much time to fulfill his pledge because he was assassi-

---

1. The IJ also found that Zagaryan's application described two beatings, whereas his testimony detailed only one. A close reading of the hearing transcript compels a contrary conclusion. 8 U.S.C. § 1252(b)(4)(B). Although the details vary, Zagaryan described at least two separate beatings in both his written and oral testimony.

2. The Government contends that Zagaryan waived the issue. However, because it was briefed by both parties, we may properly consider the issue. *See Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir.2003).

nated shortly after *Zagaryan* was conscripted into the army by assassins who claimed their action was a protest against his corrupt government. The State Department's Country Reports further demonstrate that political corruption was widespread and that the government rarely held security forces accountable for human rights abuses.

The Government does not contest the IJ's finding that the treatment that Zagaryan suffered was on account of his political or imputed political opinions. *See Desir v. Ilchert*, 840 F.2d 723, 727 (9th Cir.1988). However, because the IJ did not make a finding with regard to the first prong of the test for past persecution, we remand for further proceedings to determine whether the beatings and retaliatory conscription rose to the level of persecution, and if so, whether the Government can overcome the presumption that Zagaryan has a well-founded fear of future persecution if he were to be returned to Armenia. *See INS v. Ventura*, 537 U.S. 12, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002), *on remand* 317 F.3d 1003, 1005 (9th Cir.2003). We also remand for further proceedings on Zagaryan's claims that he is eligible for withholding and for relief under the Convention Against Torture.[3]

### III.

For the foregoing reasons, we GRANT the petition, VACATE the BIA's decision, and REMAND for further proceedings.

---

**3.** We do not reach Zagaryan's claim that he qualifies for relief from removal on the ground that he is now married to a United States citizen because he has not exhausted his administrative remedies. *Valderrama v. INS*, 260 F.3d 1083, 1086 (9th Cir.2001). We note, however, that on remand the BIA may consider a submission from Zargaryan regarding this issue, provided he complies with relevant statutes and regulations, including 8 U.S.C. § 1255 and 8 C.F.R. § 204.2. *See Malhi v. INS*, 336 F.3d 989, 993–94 (9th Cir. 2003).